IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| CYNTHIA T. MITAL, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 05-528-C-MHW |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| JO ANNE B. BARNHART, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Respondent. | ) | |

## Introduction

Currently before the Court for its consideration is Petitioner Cynthia T. Mital's

("Petitioner") request for judicial review (Docket No. 1) of the Respondent's denial of social

security disability benefits, filed December 27, 2005. Petitioner brought this action pursuant to

the Social Security Act (Act), as amended, 42 U.S.C. § 405(g). The Court has reviewed the

Petition for Review and the Answer, the parties' memorandums, the administrative record

("AR") and for the reasons that follow, will remand the matter to the Commissioner.

## I.
## Background

**A.    Administrative Proceedings**

Petitioner filed an application for Social Security Disability Insurance Benefits and

Supplemental Social Security Income on March 28, 2000. (AR 91.) She alleged disability since

December 27, 1999,[1] the date she initially stopped working full-time.  (AR 131.)  The application was initially denied on May 12, 2000.  (AR 43.)  Petitioner returned to work part-time from July 31, 2000 to September 19, 2000.  She was unable to sustain this level of work and again discontinued working.  She reapplied for benefits on March 6, 2001, with an alleged onset ate of November 2, 1999.  (AR 81.)  The application was denied initially on June 20, 2001 (AR 48) and upon consideration May 29, 2002.  (AR 54.)  After a timely request for a hearing was filed on June 12, 2002 (AR 60), Petitioner, represented by attorney representative Paul L. Clark (AR 697), appeared and testified before Administrative Law Judge (ALJ) Richard Hines on October 20, 2003.  (AR 697.)  Petitioner's husband, Jim Mital, also appeared and testified.  (AR 740.)  A second hearing was held on September 3, 2004 at which medical expert Dr. Oren H. Ellis appeared and testified as did vocational expert Debra Uhlenkott.  (AR 742.)

ALJ Hines considered the testimony and all other evidence of record and on December 3, 2004, issued a decision finding Petitioner not disabled within the meaning of the Act, and therefore she was not entitled to disability insurance benefits.  (AR 32.)  This became the final decision of the Commissioner when the Appeals Council declined to review the ALJ's decision on November 4, 2005.  (AR 8.)  Petitioner has exhausted all administrative remedies and is therefore seeking judicial review pursuant to Section 405(g) of the Social Security Act.

**B.     Statement of Facts**

At the time of the hearing before the ALJ, Petitioner was forty-six (46) years old.  (AR 22.)  Petitioner has a college education.  (AR 22.)  Her prior work experience consists of administrative assistant, student office manager and accounts receivable clerk.  (AR 22.)

---

[1]  The ALJ notes Petitioner's alleged onset of disability date as September 19, 2000 (AR 22) which is the date of disability noted by Petitioner's treating physician, Dr. Boughton, as well.  (AR 307, 514, 683.)

**Memorandum Decision and Order - Page 2**

Petitioner alleged disability since December 27, 1999 due to chronic fatigue syndrome, recurrent vascular stroke of the retina, herniated disk and degenerative changes to the lumbar spine, and cognitive slowing.  (AR 80.)

In 1990, Petitioner contracted mononucleosis and was noted to have the Epstein-Barr virus.  Since then she has had difficulty with fatigue and was soon after diagnosed with chronic fatigue syndrome.  (AR 398.)  Dr. Janice Boughton, a doctor in internal medicine, has seen Petitioner on multiple occasions regarding her chronic fatigue syndrome (CFS) since at least 1998.  (AR 258-88.)   In April of 1999, Dr. Boughton referred her to Dr. Christopher Corsi.  Dr. Corsi noted that Petitioner was experiencing symptoms of fatigue, dry skin, cold intolerance, hair loss and forgetfulness.  At this time she was taking an antidepressant (Celexa) and Armour thyroid medication, prescribed by a physician who believed she suffered from hypothyroidism.  (AR 200.)  Petitioner saw ophthalmologist Dr. Michael Ford in September of 1999 for blurred vision in her right eye.  It was noted that she had a branch retinal vein occlusion in her left eye.  (AR 202-03.)  In November of that year, Petitioner presented at the hospital with chest pain after taking a long walk.  Upon discharge she was assessed with non-cardiac chest pain, recent retinal vein thrombosis, and chronic fatigue syndrome.  (AR 204-06.)

In January of 2000, Petitioner was referred to the Mayo Clinic where she was examined by a neurologist, an ENT specialist, infectious disease specialist, a cardiologist and a psychologist.  (AR 23.)   She was diagnosed with CFS although the physician noted that it was "difficult to label her with chronic fatigue syndrome.  Sleep is not totally unrefreshing...When she exerts herself, she may be set back for, at most, a day, but not for longer than that."  (AR 386-87.)  She was found to have an atrial septal defect, a hole around the heart that can allow

blood clots to pass to the brain and eyes.   This would have been the cause of her retinal artery stroke.  (AR 306.)  In June of that same year she underwent an ASD closure procedure to repair this defect.  (AR 24.)

In February 2000, Petitioner was seen by an Dr. Wiggins, an otolaryngologist for a history of recurrent sinus infections.  The doctor noted that there was no evidence of active sinus infection on that day.  He also noted that although chronic sinusitis can be debilitating in terms of overall level of energy, he did not believe it had "a significant impact on her chronic fatigue syndrome."  (AR 224.)

On June 4, 2000 Petitioner underwent a mental status evaluation by Tim Rehnberg, Ph.D. He noted that from Petitioner's Mayo Clinic neuropsychological assessment, that her cognitive assessment was normal but her personality assessment showed an elevation on the somatization subscale.  (AR 243.)  He noted her judgment was "somewhat impaired" and that she was slow in her mathematical calculations.  (AR 246.)  Petitioner reported her depression to be borderline, that her whole life revolved around her CFS and that much of what she did on a daily basis was beyond her energy level.  (AR 245, 247.)  She reported that she was limited to 30 minutes of continuous work at any time and limited to a total of two hours of housework a day.  (AR 245.)  She stated that slept 10-11 hours a night and napped two hours a day.  (AR 245.)  She also reported difficulties with attention, concentration and memory.  (AR 247.)  Dr. Rehnberg diagnosed her with sleep disturbance due to CFS, hypersomnia subtype and adjustment disorder with depressed mood.  (AR 247.)

That August, Petitioner presented to the emergency room complaining of fatigue, dizziness, feeling mentally confused and some diaphoresis.  Petitioner had returned to work on

July 31, 2000 and the day of her emergency room visit, had done more walking than usual and some gardening.  She was sent home as she had no neurological findings, was oriented to person, time and place and had no slurred speech.  (AR 248-49.)   In September 2000, Dr. Boughton reported that Petitioner would become exhausted even without exertion and that Petitioner felt she was unable to continue working.  (AR 305-11.)  Dr. Boughton also recommended to Petitioner that she stop working due to her medical condition of chronic fatigue syndrome.  (AR 307.)

Petitioner returned to the Mayo Clinic in January 2001.  (AR 317.)  Although she was diagnosed with CFS, the examining physician noted that no definite cause of the syndrome was found and recommended psychological treatment to explore potential emotional or psychological issues that could be contributing to her symptoms.  (AR 317.)  Lab results showed that she had hyperlipidemia and hypercholesterolemia and Zocor was recommended.  (AR 317, 324.)  An EMG revealed that she suffered from bilateral carpal tunnel syndrome.  (AR 333.)  Chest x-rays showed the ASD closure device from Petitioner's June 2000 procedure was in a satisfactory position.  (AR 339-340.)  Petitioner was found to have a fibroid in her uterus that was causing abnormal bleeding.  (AR 318.)  It was also noted that she had a number of signs suggestive of asthma.  (AR 335.)

In September 2001, Petitioner was evaluated at the Center for Integrative Manual Therapy and Diagnostics for chronic fatigue and fibromyalgia.  (AR 525.)  The assessment was that she presented objective biomechanical dysfunction of the cervical, thoracic and lumbar spine and fascial dysfunction of the thorax, pelvis and cervicals.  (AR 528.)  She also presented to Dr. Geheb that month with left-sided flank pain.  (AR 463.)  This pain improved with some

chiropractic treatment which also gave her more energy.  (AR 461.)  However, by April 2002,

the back pain located in the left flank was back and she was doing physical therapy for two

hours, once a month.  (AR 519.)

      In June 2002, Petitioner complained of sudden partial vision loss in her right eye, similar

to what had previously occurred in her left eye.  (AR 509.)  On examination, she demonstrated

visual field loss with obvious funduscopic findings of a branch retinal artery occlusion.  (AR

509.)  Petitioner saw a cardiovascular specialist regarding evaluation of her retinal artery

occlusion.  (AR 511.)  There was no evidence of a cardiac source of embolism, no evidence of

vasculitis, plaving diathesis or other unusual blood dyscrasia.  The doctor noted that although

current findings point to a local cause, the bilateral nature of prior symptoms suggests a

possibility that it might be related to a spasm of the small vessel resulting in a platelet clot.  (AR

511.)

      Dr. Boughton completed an Attending Physician Statement in July 2002 stating the

limitations that impaired Petitioner's ability to return to work were cognitive dysfunction,

reduced stamina, need to rest during day, and inability to handle complex tasks.  (AR 513.)  Dr.

Boughton noted Petitioner was restricted from working since September 19, 2000.  (AR 514.)

In November 2002, Petitioner was seen by Dr. Geheb for a sudden onset of back pain. On

examination, she was noted to have decreased left-sided reflexes, bilateral SI joint discomfort

and muscle tenderness.  (AR 598.)  Subsequent x-rays and MRIs revealed degenerative disk

disease at C6-7 and to a lesser extent at C5-6 (AR 613), cervical spine was normal, (AR 612),

there was no intracranial abnormality (AR 611), an MRI of the lumbar spine revealed a herniated

disk at the L4-5 level and a bulging disc at the L3-4 level.  (AR 609.)

**Memorandum Decision and Order - Page 6**

Petitioner presented to the emergency room in January 2003 complaining of a sudden exacerbation of right peripheral vision loss.  (AR 579.)  Funduscopic examination revealed an intact retinal disc but with marked positive vascularity involving the medial hemisphere.  She was assessed with amauosis fugax and treated with Timolol to decrease introaocular pressure.  (AR 580.)  She was examined by Dr. LeClaire, an opthalmologist, a few days later.  He noted that there was no notable opacification of the nerve fiber layer in the temporal fundus of the right eye to account for the recent symptoms.  He reported her condition was a "puzzler" as there was no evidence of the visual change she noted but he did not disbelieve her experience.  (AR 584.)  In February 2003, Dr. Boughton reported that Petitioner was unable to perform any type of sustained work activity, including sedentary work.  (AR 592.)

In July 2004, Dr. Boughton noted that Petitioner had been having back and pelvic pain for the past few months and was taking Darvocet, Tylenol and Vioxx for the pain.  She also noted that ultrasounds had shown simple cysts on the right ovary and a somewhat complex cyst on the left ovary that was possibly neoplastic.  A renal abnormality was also noted on a CT.  (AR 644.)  Dr. Boughton continued to opine that Petitioner was disabled and unable to work as of September 19, 2000 for the reasons of fatigue, confusion and pain.  (AR 683.)

## II.
## Findings of the Administrative Law Judge

In the decision issued following the hearing (AR 21-32), the ALJ made specific findings as follows:

1.   The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2.   The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.      The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in Regulations 20 CFR § 404.1520(b).

4.      These medically determinable impairments do not meet or medically equal one of the listed impairments in Appexdix 1, Subpart P, Regulation No. 4.

5.      The [ALJ] finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.      The [ALJ] has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

7.      The claimant has the residual functional capacity for sedentary exertion. Climbing and balancing is limited to occasionally.  She should avoid exposure to hazards, including machinery.

8.      The claimant is able to perform her past relevant work as administrative assistant, student office manager, and accounts receivable clerk (20 CFR § 404.1565).

9.      The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

## III.
## Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *See* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security

Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); and *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims.  42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).   Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Id.*  It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled

role as the judge of credibility will be upheld as based on substantial evidence.  *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

The Social Security Commissioner has established a five-step evaluation process in order to determine whether a person is disabled for purposes of awarding disability benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lester v. Chater,* 81 F.3d 821, 828 n. 5 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  First, the Commissioner determines whether the claimant is engaged in substantial gainful activity.  If the claimant is engaged in such activity, disability benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  The ALJ determined that the Petitioner had not been involved in work activity since the alleged onset date, September 19, 2000.  (AR 20.)

Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.  The ALJ here found that Petitioner has chronic fatigue syndrome and degenerative disc disease of the cervical and lumbar spines, with arthritis and that these impairments limit her ability to work and therefore are considered "severe" under the Social Security Act and Regulations.  (AR 28.)  The ALJ noted that other impairments she has been diagnosed with, such as status post left retinal artery occlusion, chronic daily headache, mild asthma, bilateral carpal tunnel syndrome, hyperlipidemia, history of ASD status post device closure in June 2000, abnormal vaginal bleeding and possible somatoform disorder, have not been found to limited Petitioner's ability to

**Memorandum Decision and Order - Page 10**

perform work activities and therefore are not severe.  (AR 28.)

If the impairment is severe, the Commissioner proceeds to the third step of the evaluation process to determine whether the claimant has an impairment which meets or equals those contained in the Listing of Impairments found in Appendix 1, Subpart P, Regulation No. 4 and meets the duration requirement.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d), (e); 416.920(a)(4)(iii), (d), (e).  Appendix 1 contains a list of impairments which would prevent a person from engaging in substantial gainful employment.  If a claimant can show he or she is limited by such an impairment, disability is presumed.   The ALJ here determined that Petitioner's severe impairments did not meet or medically equal the severity of any of the listings in Appendix 1, Subpart P, Regulation No. 4.  (AR 28.)

If the impairment is not one that is presumed to be disabling, then the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past, i.e. whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work.  If the claimant is able to perform past work, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  In the instant case, the ALJ determined that Petitioner retained the residual functional capacity for "virtually the full range of sedentary work."  (AR 31.)   The ALJ limited climbing and balancing to occasionally and that she should avoid exposure to hazards, including machinery.  (AR 30.)   The ALJ found that the Petitioner's past work as administrative assistant, student office manager, and accounts receivable clerk required the full range of sedentary exertion but that the additional limitations imposed by her impairments would have very little effect on the exertional occupational base

**Memorandum Decision and Order - Page 11**

and that Petitioner could return to her past relevant work as administrative assistant, student office manager and accounts receivable clerk.  Based on this conclusion, the ALJ found that Petitioner was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision.  (AR 31.)

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine whether the claimant can make an adjustment to other work after considering the claimant's residual functional capacity, age, education and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The ALJ did not need to proceed to step five and it was determined at step four that Petitioner was not disabled.

## IV.
## Issues Raised

The primary issue before the Court is whether the final decision of the Secretary is supported by substantial evidence and whether it is based on proper legal standards.  *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992).  Petitioner contends that the ALJ erred in the following respects:

1)   The ALJ erred by reneging on an offer of a fully favorable decision if the Petitioner would amend her date of onset.

2)   The ALJ erred by failing to properly evaluate the Petitioner's testimony and offer clear and convincing reasons for his credibility findings.

3)   The ALJ erred by failing to credit the treating physician's opinion or adequately explain the weight given that opinion.

The Court will take each argument in order.

**V.**

**Discussion**

**A.     ALJ's Request that Petitioner Amend Her Onset Date**

In a letter dated January 7, 2004, Petitioner's counsel declined the ALJ's request that Petitioner stipulate to an amended onset date of May 15, 2002.  (AR 34.)   Petitioner alleges that the ALJ had offered a fully favorable decision if Petitioner amended her alleged onset date to May 15, 2002.  Petitioner declined this offer.  A supplemental hearing was held on September 3, 2004 in which Medical Expert Oren Ellis, M.D., testified about Petitioner's spinal impairments. Subsequently, the ALJ issued his decision and denied Petitioner's claim.  Petitioner argues that the ALJ did not explain why his decision changed regarding the level of disability as of May 15, 2002 and that he demonstrated a lack of judicial integrity by changing his decision when the Plaintiff declined to change her alleged onset date.  Petitioner asserts this arbitrary action violates her right to due process and to have the decision supported by objective evidence.  The essence of Petitioner's argument seems to be that the ALJ came to two different conclusions based on the same evidence and that this cannot be done and have both based on substantial evidence.

First, there is no evidence in the record that states the ALJ offered to give the Petitioner a favorable decision if she changed her alleged onset date.  The record only shows that there was a request by the ALJ that Petitioner stipulate to the later onset date and that Petitioner declined. (AR 34-35.)   Additionally, 42 U.S.C. 405(g) limits the district court's judicial review to the "final decision of the Commissioner."  The final decision of the Commissioner is the decision of the ALJ if the Appeals Council denies the request for review, as was the case here.  20 C.F.R. § 404.981.  The only decision subject to judicial review by this Court is the actual decision of the

ALJ, embodied in pages 21-32 of the administrative record.  The main issue with respect to the ALJ's decision is whether it is supported by substantial evidence and based on proper legal standards.  *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992).  Petitioner offers no legal support for her argument that both these "decisions" by the ALJ could not be supported by substantial evidence as they must be.  There is only one decision by the ALJ in the record and it is the decision that must be supported by substantial evidence.  The Court does not see any merit to Petitioner's argument and does not see any error in the ALJ requesting Petitioner to stipulate to a later alleged onset date but ultimately deciding to deny disability benefits.

Petitioner also argues that subsequent to the September 2004 hearing, there was new evidence received.  The Appeals Council noted that the ALJ further developed the record once this evidence was received and made his decision based on the expanded record.  Petitioner maintains that one piece of evidence, a report from Dr. William Osebold dated October 29, 2004 (AR 686-690), was never reviewed by the ALJ.  Petitioner argues that the Appeals Council misconstrued this evidence and stated that it contained no evidence of herniation, when in fact the report did note that an MRI on November 14, 2002 showed "disk herniation at L4-5."  (AR 688.)  Dr. Osebold also noted absent Babinski signs which Petitioner maintains can indicate the presence of an upper motor neuron lesion.  (AR 689.)

Under 42 U.S.C. 405(g), to determine whether to remand a case in light of new evidence, the court must examine whether the new evidence is material to a disability determination and whether a claimant has shown good cause for failure to present the new evidence to the ALJ earlier.  *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).  To be material, the new evidence must bear directly and substantially on the matter in dispute.  *Id*.  The claimant must

also demonstrate that there is a "reasonable possibility" that the new evidence would have changed the outcome of the administrative hearing.  *Id*.  As to the good cause requirement, a claimant must demonstrate that the new evidence was unavailable earlier.  *Id*. at 463.

The MRI showing disk herniation that Dr. Osebold references in his report was already in the medical record.  (AR 609.)  This MRI from November 2002, and the herniated disk at L4-5 shown in this MRI, was discussed in the ALJ's decision.  (AR 27.)  As this herniated disk was discussed in the ALJ's decision, the error in the Appeal Council's letter that there was "no herniation," would not be material new evidence.  (AR 9, 27, 609).  Petitioner also does not make any argument as to how this evidence would be material.

Regarding Petitioner's other argument that Dr. Osebold noted absent Babinski signs which she maintains can indicate the presence of an upper motor neuron lesion. Petitioner does not advance any argument that this evidence is material nor does she present evidence of good cause for not presenting this evidence earlier.[2]

Petitioner does not even attempt to make a showing of a reasonable possibility that this report could change the outcome of the ALJ's decision.  The Court does not find this report to be material new evidence.  The report's contents are either already contained in the record or are of no significance.  There is no reasonable possibility that this report would change the ALJ's decision.

---

[2]   Additionally, it appears Petitioner is incorrect in her interpretation of "absent Babinksi signs."  A Babinski sign is a reflex movement in which when the sole of the foot is tickled, the big toe extends instead of flexes and the outer toes spread out.  Taber's Cyclopedic Medical Dictionary 151 (14th ed. 1981.)  Presence of the Babinski sign occurs in lesions of the pyramidal tract.  *Id*.  Dr. Osebold noted "absent" Babinski signs, meaning Petitioner did not demonstrate this reflex and thus there would be no indication of lesions.

**B.**      **Finding of Petitioner's Credibility and Rejecting Lay Witness Testimony**

Petitioner asserts that the ALJ failed to give clear and convincing reasons to support his finding that Petitioner was not credible.  Petitioner argues that the ALJ ignored portions of her testimony that contradicted his conclusion, misconstrued her testimony and ignored Dr. Boughton's opinion that Petitioner is credible, instead noting that Dr. Boughton was the only physician to state Petitioner could not work.  Petitioner points out that no physician has contradicted Dr. Boughton's opinion and stated that she is able to work, nor has any physician stated she is malingering.  Petitioner maintains her testimony is consistent with her allegations of disability.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons.  *Id*.  If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony.)  Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony.  *Id*.  General findings are insufficient, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record.  *Regennitter v. Comm'r of*

*Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider: location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

The ALJ's reasons for finding Petitioner to be less than fully credible include inconsistencies between her testimony and her daily activities such as swimming, taking continuing education classes, walking, attending church, driving and doing "all activities of daily living." (AR 29.) He stated that it is only her general practitioner physician who opines that Petitioner is unable to work and the physician relies heavily on subjective reports from Petitioner in doing so. The ALJ also noted that no cognitive deficits had been found.

Petitioner's testimony was that she swam once a week for a few months in the summer of 2003, that sometimes she was too tired to drive 20 minutes to the pool, and one particular time she had to lay in bed the rest of the day after doing 30 minutes of slow swimming. (AR 719.) She stated on good days, she could take her dogs on two fifteen minute walks but also noted that some days she cannot walk the half mile to her mail box. (AR 718, 723.) She has to nap in between these walks. (AR 723.) If she misses a nap, she cannot do much of anything the next

day, including not walking her dogs.  (AR 726.)  She testified that in 2002 she did two online

non-graded courses to maintain her teaching certificate but did so "with difficulty."  (AR 722.)

Her one social activity is church once a week and she occasionally sings in the choir but sits

down while doing so.  (AR 716-717.)  Other social activity is limited to talking on the phone and

a rare lunch with a friend.  (AR 717.)  As far as driving, she only drives to doctors' appointments,

the grocery store and church, a total of three times a week.  (AR 717-718.)  She has also stated

that she "can't concentrate on a simple road" and got to the point when she was working where

she was "afraid to drive home" because she was too exhausted to concentrate.  (AR 714.)  The

ALJ stated that Petitioner was "doing all activities of daily living."  (AR 29.)  Petitioner testified

that she can groom herself but sometimes is so exhausted after a shower she has to rest. (AR

718.)  She can cook and prepare meals but only for ten minutes a time and then has to rest before

continuing.  She can vacuum five to ten minutes a time.  She has to separate out basic tasks of

living with intermittent rest.  (AR 716.)  At the most, she can do 30-40 minutes of activity before

needing to rest.  (AR 728.)

The ALJ's reasons for not finding Petitioner fully credible are not supported by

substantial evidence in the record.  The inconsistencies he notes between Petitioner's testimony

regarding her limitations and his paraphrasing of her daily activities are not accurately reflected

in the record.   In his description of Petitioner's testimony, the ALJ greatly overstates her daily

activities and omits all of her limitations in performing these activities, such as requiring rest

frequently and limiting how long she is active.  The ALJ made no finding that Petitioner was

malingering and without such evidence, he must have clear and convincing reasons for finding

her not credible.   Inaccurate paraphrasing of Petitioner's testimony and the fact that only Dr.

Bougthon found Petitioner unable to work, when no other physicians contradicted that statement, are not clear and convincing reasons for finding Petitioner not fully credible.

Additionally, it should be noted that the Ninth Circuit has recognized that CFS is episodic and prolonged undertakings can be consistent with the disease as CFS is "characterized by periods of exacerbation and remission." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998.)  That court also noted that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Id*.  In accord with this notion, Petitioner stated she dislikes "being a prisoner to the couch or the bed" and that her dogs force her to get exercise even when she is feeling "lousy."  (AR 718, 725-26.)  Petitioner clearly tries to lead the fullest life she can despite her limitations.  She should not be punished simply because she attempts to have some activity in her life.  The ALJ's reasoning for finding Petitioner not fully credible is not supported by substantial evidence in the record.

Petitioner also argues that the ALJ ignored and "twisted" the testimony of Petitioner's husband, Mr. Mital.  Petitioner maintains that the ALJ improperly rejected Mr. Mital's testimony and did not provide any reason for doing so.

Descriptions by friends and family members in a position to observe the claimant's symptoms and daily activities have routinely been treated as competent evidence.  *Smith v. Bowen*, 849 F.2d 1222, 1226 (9th Cir. 1988).  Lay testimony is evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ did include the testimony of Petitioner's husband in his discussion about the Petitioner's credibility.  By discussing his testimony, the ALJ did not disregard it.  Additionally,

**Memorandum Decision and Order - Page 19**

it was unnecessary for the ALJ to provide reasons for rejecting the testimony because he never stated that he was rejecting the testimony or that he found the witness to not be credible.

## C.    Evaluation of Treating Physician's Opinion

Petitioner argues that the ALJ failed to give clear and convincing reasons for disregarding Dr. Boughton's opinions.  Petitioner maintains that the ALJ improperly disregarded Dr. Boughton's opinion by finding Petitioner's testimony less than fully credible and misconstruing the evidence to find the CFS diagnosis "highly questionable."  (AR 30.) Petitioner contends that the ALJ ignores the mandate of 20 C.F.R. § 404.1527(d)(2) which lists several factors to consider in evaluating a medical opinion, such as length and nature of treatment relationship.  Petitioner also asserts that the ALJ is unwilling to accept CFS as the basis of disability regardless of Social Security Ruling 99-2p which states, "conflicting evidence in the medical record is not unusual in cases of CFS due to the complicated diagnostic process involved in these cases."

In general, a treating physician's opinion is given more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion.  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  A physician's opinion should be based on clinical or otherwise reliable evidence and not solely upon the patient's subjective complaints.  *Brawner v. Sec'y of Health and Human Services*, 839 F.3d 432, 434 (9th Cir. 1988).  For instance, an ALJ is not required to accept an opinion of a treating physician if it is conclusory and found to be unsupported by clinical findings.  *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992).  Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability.

*Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ may reject a treating or examining physician's uncontradicted opinion for "clear and convincing" reasons. *Id*. To reject the opinion of a treating physician which conflicts with an examining physician's opinion, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Id*. The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*.

In a case specifically addressing chronic fatigue syndrome, the Ninth Circuit stated that the ALJ's rejection of a treating and an examining physicians' opinions because "they were based on the subjective complaints of the claimants" was ill-suited to a CFS case because chronic fatigue is defined as "*self-reported* persistent or relapsing fatigue lasting six or more consecutive months." *Reddick v. Chater*, 157 F.3d 715, 725-26 (9th Cir. 1998) (emphasis in original). That court also noted that the final diagnosis of CFS is made "'by exclusion,' or ruling out other possible illnesses." *Id*.

The ALJ does not give Dr. Boughton's opinion controlling weight because the "chronic fatigue syndrome diagnosis is highly questionable and the cognitive deficits are apparently based only on the claimant's statements, and she has been found to be not entirely credible." (AR 30.) The ALJ found the diagnosis "highly questionable" because the record "shows that the diagnosis of chronic fatigue syndrome is without any objective evidence or testing...this appears to be a rule out, or working diagnosis." (AR 30.) The ALJ then gives the claimant the benefit of the doubt and states the fatigue associated with CFS is factored into the residual functional capacity determination. (AR 30.)

**Memorandum Decision and Order - Page 21**

The opinion of Petitioner's treating physician, Dr. Boughton, that Petitioner suffers from chronic fatigue syndrome and is unable to work is uncontradicted.  Therefore, the ALJ must set forth clear and convincing reasons for rejecting her opinion which he has not done.  One reason the ALJ gave for affording Dr. Boughton's opinion less weight was that the CFS diagnosis was a "rule out" diagnosis.  That is not a convincing reason for discrediting Dr. Boughton's opinion.  The very nature of chronic fatigue syndrome makes it a "rule out" diagnosis as there are no objective or clinical tests that establish the disorder.  Even the Ninth Circuit held that the final diagnosis of CFS is made by "ruling out other possible illnesses." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998).  Additionally, extensive testing was performed at the Mayo Clinic and by other physicians over the years and no other causes of Petitioner's fatigue were discovered.  The very fact that CFS is a "rule out" disorder makes this rationale unconvincing.

As to the ALJ's other rationale, that the cognitive deficits were based on Petitioner's statements and she was not found fully credible, this is unconvincing as well.  Many of the symptoms of CFS are self-reported, including fatigue itself.  In *Reddick v. Chater*, the Ninth Circuit noted that ALJ's reasoning for rejecting two physicians' opinions because they were "based on the subjective complaints of the claimant who was found not very credible" was unfitting in a CFS case because the presence of persistent fatigue is necessarily self-reported.  Additionally, this rationale is not supported by substantial evidence in the record as Dr. Rehnberg noted that Petitioner had impaired judgment and was slow in some mental activities, although overall he found her cognitive assessment to be normal.  The ALJ has not provided clear and convincing reasons for giving less weight to the treating physician's opinion.

**VI.**
**Conclusion**

Based on its review of the entire record, the Court finds it necessary for this matter to be remanded to the Commissioner of the Social Security Administration.  In accordance with this decision, the Commissioner must reevaluate Petitioner's credibility and appropriately weigh the medical opinion of the treating physician.

**ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1)      Plaintiff's Petition for Review (Docket No. 1) is GRANTED.

2)      This action shall be REMANDED to the Commissioner for review in accordance with this order.

3)      This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. §  405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

4)      Petitioner's Motion for Summary Judgment (Docket No. 8) is MOOT.

DATED: March 16, 2007

_____
Honorable Mikel H. Williams
United States Magistrate Judge

**Memorandum Decision and Order - Page 23**